BABCOCK *vs.* THE MONTGOMERY COUNTY MUTUAL INSURANCE
COMPANY.

A building was insured generally against loss by fire, and in a separate clause the
   policy declared that the insurers would be liable for fire by lightning. The build-
   ing was struck by lightning, prostrated and destroyed, but no ignition or combus-
   tion took place. *Held,* that the insurers were not liable for the loss.
The insurance, it seems, was against fire, in the ordinary or popular meaning of the
   term, i. e. actual ignition or burning, and not against the mechanical effects of light-
   ning; and therefore, it was held unnecessary to determine whether lightning is fire,
   scientifically considered.

BABCOCK sued the Montgomery County Mutual Insurance
Company in the supreme court, and declared on a fire policy,
dated the 21st of September, 1844, whereby the defendants in-
sured two dwelling houses and out-buildings of the plaintiff,
against loss by fire for five years from the date of the policy.
The conditions annexed to the policy and forming a part there-
of, contained a clause in these words: "The company will be
liable for *fire by lightning,* but not for any loss or damage by
fire happening by means of any invasion, insurrection, riot," &c.
The declaration, after setting forth the policy, proceeded to al-

Bacbock *v.* The Montgomery Co. Mu. Ins. Co.

ledge that on the 31st of August, 1846, one of the houses insured " was struck by lightning, and was thereby *prostrated and demolished,* and by the said fire by lightning was overthrown and destroyed." · The defendants demurred to the declaration, [327] on the ground that it only showed that the building was prostrated by the lightning, and did not show that it was consumed or injured by fire. The plaintiff joined in demurrer. The supreme court gave judgment in favor of the defendants, and the plaintiff appealed to this court. The only question discussed, was whether the destruction of the dwelling, by being rent and torn to pieces by lightning, without being burnt or consumed, was a loss covered by the policy.

*Ward Hunt,* for appellant. I. To entitle the plaintiff to recover, it is not necessary that there should be an actual combustion of the subject matter; it is sufficient if fire is the proximate cause of the injury. (13 *John.* 451 ; 21 *Wend.* 367 ; 11 *Peters,* 213.) Lightning is fire, and a destruction by lightning is necessarily a destruction by fire within the policy. In the ordinary acceptation of language and according to the popular understanding of the words, lightning is fire.

II. The building in question having been prostrated and destroyed by lightning, the plaintiff·is entitled to recover. The expression, " fire by lightning," was intended to meet a case like the present. Where there is a combustion in the ordinary manner, the company would be liable without reference to the cause, and it would have been unnecessary to specify that they would be liable. Where no combustion should take place, it was proper to state their liability expressly, to avoid all question upon what might otherwise be questionable. Fire being an essential element of lightning, and there being a destruction by lightning, if the company wish to relieve themselves, they must show affirmatively that they have guarded against responsibility in such a case. This they have not done.

*N. Hill, Jr.* for respondents. I. The peril insured against is a *loss by fire* in the ordinary and popular sense of those terms ;

i. e. a loss occasioned by *ignition* or *burning,* not by *heat* or *mechanical force.* The words of a policy are to be understood in their ordinary and popular signification, and not in any arti-[328] ficial or technical sense. (2 *Arch. Nisi Prius,* 145, 272 ; 1 *Duer on Ins.* 162, 3 ; 4 *East's Rep.* 135 ; 1 *Sand. Sup. Ct. Rep.* 137 ; 5 *Bos. & Pull.* 213.) Fire, in popular language, means *combustion,* and is synonymous with *burning* or *conflagration ;* and in this sense it has always been used by judges and elementary writers. (*Webst. Dict.* "*Fire,*" 4*th ed.; Hall's Enc.* "*Ignition ;*" 2 *Arnould on Ins.* 806, *ed. of* 1850 ; 1 *Phil. on Ins.* 631, 2, *ed. of* 1840 ; 1 *Bell's Com.* 626 ; *Hughes on Ins.* 390, *Am. ed. of* 1833 ; 3 *Barr's Rep.* 473, 474 ; 5 *id.* 183, 193 ; *Smith's Merc. Law,* 340, *Am. ed.*) It has been expressly adjudged, moreover, that there must be actual fire or burning, to entitle the plaintiff to recover ; and that mere *heat* or *caloric,* however destructive, is not enough. (4 *Campb. Rep.* 360 ; 6 *Taunt. Rep.* 436 ; 2 *Marsh. Rep.* 130 ; 1 *Bell's Com.* 626 ; *Hughes on Ins.* 390, *Am. ed.* 1833 ; 3 *Barr's Rep.* 470, 473 ; 1 *Phil. on Ins.* 632, *ed.* 1840 ; 2 *Arch. Nisi Prius,* 282 ; *Ellis on Ins.* 25.) When damage is done by the mere *violence* of lightning, it is never called a *loss by fire,* either in popular language, or according to the nomenclature of science. If the word fire includes lightning in some *artificial or scientific sense* to be made out by argument or inference, still its *popular meaning* is to control. (2 *H. Black. Rep.* 530.)

II. A loss by *lightning,* without ignition or combustion, is excluded from the perils insured against *by the very terms* of the policy in question. Lightning frequently destroys by its mere *mechanical* effect ; i. e. by its *own proper force.* Fire is one of its many possible *chemical* effects. The policy does not insure against *lightning* generally, nor against *all* its possible effects, but only against *one* of them, viz. *fire.* That this was the intent is rendered plain by the terms " fire by lightning," in the conditions ; i. e. fire *caused* by lightning. The conditions being expressly made a part of the policy, are to be resorted to in ascertaining the intent. (2 *Comst.* 210 ; 5 *Hill,* 188 ; *Story on Contr.* § 257 ; *Broom's Leg. Max.* 249 ; 1 *Duer on Ins.* 165.)

The intent *expressed by the words* is to govern, and not any speculative or conjectural intent. (*Story on Contr.* § 235 ; 1 *Duer on Ins.* 176, 7.) By thus selecting *fire* from the many possible effects of lightning, and designating *that* alone [329] as the peril insured against, its mere *mechanical effects* are necessarily excluded : *Expressio unius est exclusio alterius.* (*Co. Lit.* 210, *a ;* Burrill's *Law Dict.* " *Expressio ;*" 17 *Wend. Rep.* 297.)

III. To constitute a loss within the peril insured against, *fire* must be the destroying agent; the efficient and direct cause. " It were infinite," says Lord Bacon, " for the law to judge the cause of causes, and their impulsions one of another ; therefore it contenteth itself with the *immediate cause*, without looking to any further degree :" *Causa proxima, non remota spectatur.* (*Bac. Max. Reg.* 1 ; *Broom's Leg. Max.* 104 ; Burrill's *Law Dict.* " *Causa ;*" 3 *Barr's Rep.* 470 ; 6 *Adol. & El.* 75 ; 11 *John. Rep.* 15.) It is not enough, therefore, that fire is *sometimes* caused by lightning, but it must be *actually caused* in the particular instance, and the loss must result from *its* action ; not from any of the *other* effects of lightning. Hence if it was even shown that the lightning in this case produced fire near the building, or elsewhere, yet if the loss was the result of mere *mechanical violence*, and the fire had nothing to do with it, it would not be within the specified peril. To hold the insurers liable for losses arising from all agencies which *may cause fire*, without regard to whether it was in *fact caused*, or whether it *affected the building*, would extend their liability much too far. It is not necessary that *the building itself* be burned or consumed to constitute a loss within the rule contended for ; it is enough if fire is actually present, and causes the loss by any one of its known agencies ; *e. g.* by the ignition of gunpowder stored in the building, &c.

IV. The court will not decide in this case whether, as a mere *question of natural science*, fire and lightning are identical. If the scientific question were relevant, there being at least *doubt* about it, the court will look no further, but resolve the doubt against the pleader. But the question is not relevant, the true

inquiry being whether fire and lightning are identical *in popular language and in the present policy.* Again, disputed questions in science are not matters *of law* for the court, but *of fact* [330] for the jury, and the parties have a right to adduce testimony in respect to them. (1 *Stark. Ev.* 54, 74, 483, *and note y, ed. of* 1830; 1 *Best's Prin. of Ev.* 386; 2 *Phill. and Amos,* 899, *et seq.;* 3 *Fairf.* 222, 230, 3 *Dougl.* 157; 5 *Carr. & Payne,* 73.) In a case, therefore, necessarily involving the decision of a disputed problem in science, the plaintiff must not *propound it as such to the court,* but frame his pleading so that issue may be taken upon it, and the question tried like other matters of fact. If issue is taken in the present case, the only question will be whether the building was *struck* by lightning, and thereby *prostrated* and *overthrown,* &c.; not whether fire and lightning are the same. But if the plaintiff had alledged that the loss was *by fire,* a denial of it would have enabled both parties to try the scientific question by witnesses, before a jury.

V. But if the court investigate the scientific problem propounded by the pleader, with a view of solving it *by adjudication,* they will find that fire and lightning are not identical. The constituent property of lightning is electricity, and its phenomena are either *mechanical, chemical, magnetical,* or *physiological.* (*Sturgeon on Elect.* 124, 181; 8 *Edinb. Encycl.* 238, 239, 312; *Olmst. Philos.* § 644, *ed. of* 1849.) The *chemical* phenomena of electricity embrace, among other things, all its calorific effects, including the peril specified in the policy, that is, *fire* by lightning. (8 *Edinb. Encycl.* 322; *Olmst. Philos.* § 620, *ed. of* 1849; *Sommerv. Conn. of Phys. Sci.* 282, 283; *Eclec. Mag. April,* 1844, *p.* 570.) Its *mechanical* phenomena are precisely those, among others, described in the declaration, viz. *rending, prostrating, demolishing,* &c. (8 *Edinb. Enc.* 318; *Olmst. Philos.* § 619; *Sommerv. Conn. of Phys. Sci.* 282, 283.) The idea that lightning is fire is derived from an isolated and superficial view of some of its phenomena, *e. g. light* and *heat.* The light produced by electricity is not a constituent part of it, and sometimes, although exceedingly dazzling, has no calorific effect. (*Olmst. Philos.* §§ 607, 615;

*Sommerv. Conn. of Phys. Sci.* 288, 9 ; *Eclect. Mag. April,* 1848, *p.* 444; *Harris' Rud. Electr.* 148.) Heat is not an element or property of electricity, though it may be evolved by it, as it may by many other forces. (*Sturg. on Electr.* [331] 161, 2 ; *Sturg. on Galv.* 209 ; 10 *Edinb. Enc.* 296 ; *Olmst. Philos.* § 615 ; *Sommerv. Phy. Geog.* 288; *Harris' Rud. Electr.* 130.)

Most of the phenomena of lightning prove that it has a power of destroying *by its own proper force alone,* without the aid of heat, fire or any other agent.´ (*See Sommerv. Conn. of Phys. Sci.* 282, 3 ; 8 *Edinb. Enc.* 318 ; *Olmst. Philos.* § 619 ; 16 *Niles' Reg.* 416 ; 20 *Hunt's Merch. Mag.* 401 ; 24 *Niles' Reg.* 213.) A strong evidence of this is its power of simple *perforation,* which together with other instances of its most intense action within very small limits, shows that its force is not *explosive,* as in the case of fire applied to gunpowder or inflammable air in mines. (8 *Edinb. Enc.* 318 ; *Sommerv. Conn. of Phys. Sci.* 283 ; *Alb. State Reg. Aug.* 17, 1850 ; 16 *Niles' Reg.* 416 ; 20 *Hunt's Merch. Mag.* 401.) Its calorific and mechanical phenomena are *essentially* distinct, as is shown by the fact that the fluid frequently divides, setting one object on fire, and destroying another by mere violence. (44 *Niles' Reg.* 421 ; *Ecl. Mag. April,* 1844, *p.* 570.) The mechanical force of lightning being *sufficient* to account for the loss in the present case, and being at all events *the apparent cause,* it is illogical to resort to the hypothesis of another agency *not apparent.* (1 *Stark. Ev.* 497, *note y, ed. of* 1837; *id.* 483, *note y. ed. of* 1830.)

HURLBUT, J. By the policy set forth in the declaration the defendants became " liable for fire by lightning," and the dwelling house of the plaintiff which was the subject of insurance, " was rent and torn to pieces by lightning, without being burnt or consumed ;" and the question is, whether this was a loss within the meaning of the policy ?

The proposition of the plaintiff is, that in the ordinary acceptation of language, *lightning is fire,* and hence that destruction by lightning in any manner, is necessarily a destruction by fire;

or, if not, that in effect, the language of this policy imported an insurance against lightning. In support of the first branch of this proposition, reference was made on the argument as [332] well to passages in ancient scripture, as to the writings of modern philosophers. In the first book of *Kings*, (*ch.* 18, *v.* 38,) " the *fire* of the Lord" is mentioned as a destructive agent; and at an early stage in the afflictions of Job he received intelligence that " The *fire* of God is fallen from heaven and hath burned up the sheep and the servants and consumed them." (*Job*, *ch.* 1, *v.* 16.) If the fire thus spoken of were atmospheric electricity, which there may be some reason to doubt, still, according to the same book, the voice which answered Job out of the whirlwind, designated it as " the lightning of thunder;" and as if in derision of all human effort to understand or control its action, inquired, " Canst thou send lightnings that they may go, and say unto thee, here we are?" (*Job*, *ch.* 38, *v.* 25, 35.)

A conjecture as to the identity of fire and lightning appears to have been indulged in by the ancients. Seneca maintained it as probable, and stated that the Stoics believed that air was converted into fire and water during a thunder storm. The Epicureans are represented to have taught that lightning consisted of fire alone, which was derived from the sun.

In figurative speech and poetry, lightning is designated by a variety of terms. Milton, in *Paradise Lost*, (*book* 10,) speaks of the collision of two bodies grinding " the air attrite to *fire*."

————— " as late the clouds
Justling, or pushed with winds, rude in their shock
Tine the slant lightning, whose thwart flame driven down
Kindles the gummy bark of fir or pine."

Spenser alludes to a person dying, " as one with lightning *fired;*" while Pope, in referring to death caused by lightning, does not suggest the idea of fire, but describes the fatal influence as the " touch ethereal," which seems to be a poetic term for one of the mechanical effects of electricity. Byron, in the third canto of Childe Harold's Pilgrimage has this expression—

Babcock *v.* The Montgomery Co. Mu. Ins. Co.

> "From peak to peak the rattling crags among
> Leaps the *live thunder*."

And again—

> ———————— "as a tree
> *On fire by lightning;* with ethereal flame
> Kindled he was and blasted"

From these references, however, we derive but little aid in ascertaining either the popular acceptation or the true [333] meaning of the term lightning.

If we turn to the books of the learned relating to electricity and caloric or heat, we shall encounter much doubt and contradiction. *Descartes* has said that " there is nothing in the whole range of philosophy which does not admit of two opposite opinions ;" and in the present state of science, electricity and caloric can not be regarded as exceptions to this remark. The former is spoken of as an " invisible agency in the natural world, dependent on an extremely subtle species of matter, either of a compound or elementary character, every where present, and operating according to certain laws, some of which are known, while others remain to be determined." (*Harris on some Elementary Laws of Electricity ; Transactions of the Royal Soc. London*, 1834.) But this is no sooner affirmed by one learned writer, than this omnipresent and invisible agent is declared by another scientific gentleman not to be electricity, but caloric, " the first of second causes," of which electricity is only a modification. *Dr. Lardner* (1 *Lectures on Science and Art,* 539, 540,) presents a table containing numerous instances of the descent of " ball lightning," as collected by M. Arago, in which it is described as " balls of fire" and " globes of fire." But we have it from very high authority, that although electric discharges have occasionally been described in that form, yet that they are entirely incompatible with all that is known of electricity and its modes of discharge ; and that although the phenomena of balls of fire may appear in the atmosphere, it is denied that they have any thing to do with the discharge of ordinary electricity, or that they are at all related to lightning. (*Faraday's Experimental Researches in Electricity*, § 1641.)

HARVARD LAW SCHOOL LIBRARY

*Dr. Franklin* at one time considered that the fusion of metals by the electric fluid was a "cold fusion;" but it is now believed that the influence in question results from the operation of the fluid in raising the temperature of metals, as it appears that heat is evolved by common electricity when passed through wires or other substances. And the current of scientific opinion is at present in favor of the notion that heat and electricity [334] are distinct from each other, although distinguished names may be cited to the contrary. (*Faraday ut sup.* §§ 287, 1625; 2 *Lardner's Lectures*, 66; 10 *Edin. Ency.* 295; *Metcalf on Caloric, passim.*) *Beccaria*, according to *Priestley*, reckoned hail, rain and snow among the effects of a moderate electricity; and held that water spouts, tornadoes and earthquakes have an electric origin. But *Dr. Metcalf* maintains not only that caloric is the cause of these, but is the main force operating to produce the mechanical, chemical and vital transformations throughout the universe. (1 *Metcalf on Caloric, London ed.* 1843, *p.* 20, 22, 44.) This learned and ingenious writer insists that caloric is not the offspring of electricity, but that the latter is a modification of the igneous principle. That caloric is omnipresent, whilst its offspring in the form of electric fluid is only occasional; that without caloric there could be no electricity; that by the attraction of caloric for ponderable matter, it unites and holds together all things, and by its self-repulsive agency it separates and expands all things—asserting with *Bacon* that "heat and cold are nature's two hands." In reference to electric discharges in the atmosphere, he maintains, that upon the condensation of aqueous vapor, its caloric is given out in the concentrated form of lightning; and he thinks it probable that the luminosity of the spark is owing to a sudden combustion of air or vapor by so intense a heat. (1 *Metcalf on Caloric,* 204, 176, 282, 298, 301, 337.) He conceives that the mechanical force of electricity demonstrates that it is a material agent—and that when greatly concentrated it produces the phenomena ascribed to caloric—and if it combine with metals or other bodies producing their liquidity, &c. it communicates no shock, its pe-

culiar properties being merged into those of ordinary caloric. (*Id. p.* 313, 318, 287.)

It is however conceded by this writer, " that almost every thing connected with the origin and laws of electricity is either debatable or unintelligible ; some maintaining that it is a subtle and inconceivable refined species of matter diffused throughout nature ; others, that it is a compound of two fluids, each of which repels its own particles and is attracted by the other; while a third party maintains that it is neither, but a [335] mere effect or property of ponderable matter."

If the learned in natural science are thus in doubt, how can the court pronounce upon the nature of electricity ? It is fortunate that the law has wisely relieved us from such a burthen. " It were infinite," says Bacon, " for the law to consider the causes of causes, and their impulsions one of another; therefore it contenteth itself with the *immediate cause,* and judgeth of acts by that, without looking to any further degree." (*Bac. Max. reg.* 1 ; *Broom's Max.* 105.)

But while we are neither able nor required to determine what electricity is, some of its effects are well understood and agreed to by men of science, and are apparent to ordinary observers. Among its prominent and well shown effects, is its mechanical agency in rending solid matter, which is an imperfect conductor, in impelling and dispersing light bodies : in perforating, expanding, compressing, tearing and breaking to pieces, &c. (*Edinb. Enc. tit. Electricity.*) It has not been ascertained how this influence is exerted, although it has been sometimes referred to the expansion of the water or other fluid, contained in the pores of the body which the electric fluid penetrates. But however that may be, it is clear that it may produce the effects mentioned without actually setting fire to the object acted upon.

The action of electricity in the evolution of light and heat, in inflaming combustible bodies, in fusing metals, &c. is reckoned among its well known chemical effects. And it appears to have been ascertained that " the chemical power of a current of electricity, is in direct proportion to the absolute quan-

tity of electricity which passes." (8 *Ed. Ency.* 322; *Faraday's Exp. Res. in Electricity,* § 783.)

Treating electricity as an agent which is capable of producing destructive effects, it is mainly, if not altogether in reference to its well known modes of mechanical and chemical action, that danger is to be apprehended to property; and it is therefore, only as against these, that insurance would naturally be required. No doubt it would be proper for the owner of property to ask for indemnity against all the effects of light- [336] ning, as it would clearly be competent for the insurer to limit the policy to certain specified effects. In case of a general insurance against lightning, as the risk would be increased beyond what it would be in case it were limited to only one known effect of it, it is to be presumed that the rate of premium would be proportionately enhanced; and whether the insurance be general or limited, or what is its character and effect, must in all cases be gathered from the language of the policy. In the case in hand, the parties, who are presumed to have had an ordinary acquaintance with the known effects of lightning upon a building, and knowing that it might either rend, shatter, and prostrate it, or ignite and cause it to be consumed, entered into the contract of insurance, which is the foundation of this controversy. They employed ordinary words, and not scientific terms, to express their meaning; and the policy must be understood in the plain, ordinary and popular sense of the words used in it. (2 *Arch. N. P.* 272.) Taking the language of the policy in this sense, the defendants did not undertake to indemnify the plaintiff against lightning, nor the effects of lightning. Such an undertaking might have charged them with the loss alledged to have been incurred. But they became liable for one only of the known effects of lightning, to wit, for *fire* produced by that means; having treated the lightning as a cause, and fire resulting from it, as an effect, and the only effect to be insured against.

According to Webster, "lightning" is defined to be "a sudden discharge of electricity from a cloud to the earth, &c. producing a vivid flash of light," &c. He does not speak of

" fire" in connection with it; while he defines the latter to be " heat and light emanating visibly, perceptibly, and simultaneously, from any body; or in popular acceptation, the effect of combustion." Here we have the sense in which it must be intended that the parties employed these terms in their contract; and it seems to me that the learned judge who delivered the opinion of the supreme court, was entirely correct, in saying that the terms of the policy exclude the idea that it was intended to cover damage by lightning, when there was no ignition. The insurance was against fire, and the clause [337] in reference to lightning seems to have been introduced to avoid any doubt which might arise as to the liability of the insurers for fire originating from that peculiar source. But however that may be, the declaration should have averred a loss by fire, i. e. from actual ignition and burning; whereas the averments of the plaintiff as modified by the stipulation between the attornies, present a case of mechanical destruction purely, and expressly negative the idea of burning or consumption by fire, in the common acceptation of the term. The very obvious remark of Ch. J. Gibson, in 3 *Barr Penn. Rep.* 47, is applicable here : that " when the peril insured against is fire, the instrument of destruction must be fire."

An old writer, ( *Weskett on Ins.* 212, 213,) speaks of insurances against fire as securing the insured from the "flames," and of the risk of the insurer being diminished where " there is a plenty of water, and dispositions have been made for the extinguishment of fires." But these would have very little influence in arresting the mechanical effects of lightning. *Emerigon on Insurances,* (*translated by Meredith,*) *ch.* 12, § 17, speaks of the liability of insurers for " accident by fire," when " caused by lightning." In 1 *Philips on Ins.* 631, 2, it is said in reference to maritime insurers, that they " are liable for loss when the property is consumed by lightning," &c. In *Smith's Mercantile Law,* 340, it is said to be immaterial how the fire was occasioned, whether by lightning or any other cause. In 1 *Camp. R.* 123, Lord Ellenborough said, " if the ship is destroyed by fire, it is of no consequence whether it was occasioned by a

cannon, accident, or by lightning," &c.  "Loss by fire, when caused by lightning, is held to be a charge upon the underwriters, under the word ' fire,' in our common form of policy." (2 *Arnould, on Marine Ins.* 806.)  These authorities which were referred to by the learned counsel for the defendants, show the legal acceptation of the term " fire," in connection with " lightning," and it is but a reiteration of its popular meaning.  It is the effect of combustion, caused by lightning.  The latter is not treated as " fire," but as an agent that may produce fire, which is the immediate and only recognized cause of loss.

[338]    Electricity, caloric or heat, may so act, without producing fire, as to cause great injuries to property ; but these are not embraced by an insurance against fire alone.  (*Austin* v. *Drew,* 4 *Camp. N. P. R.* 360 ; 6 *Taunt R.* 437.)

On the whole, I think it clear that the plaintiff has not averred a loss within the meaning of the policy ; and that the judgment of the supreme court, with the very clear and satisfactory reasons assigned in its favor by Mr. Justice Pratt, should receive the concurrence of this court.

Judgment affirmed.