CHARLES ALLISON, Respondent, *v.* THE CORN EXCHANGE INSURANCE COMPANY, Appellant.

Defendant issued a policy of insurance upon plaintiff's canal boat for one year. Among other excepted perils was damages from ice. At the close of navigation the boat was moored in the canal basin at O. and frozen in; in the spring, when the ice broke loose in the river O., it jammed, forming a partial dam, which set back the water so that it flowed over a sea-wall separating the river from the basin; the stern of the boat became loosened while the bow remained fast in the ice, and in consequence the boat was twisted and injured. In an action upon the policy, *held*, that exemption from liability for damages occasioned by ice was not limited to the season of navigation; also (EARL and JOHNSON, CC., dissenting), that the ice was the proximate cause of the injury and that defendant was not liable.

By the policy the boat was required to be safely moored, satisfactorily to the defendant, during the winter. *Held* (EARL, C.), that this did not require the boat to be moored with absolute safety, but in a proper place and with reasonable care and safety; nor did it require notice to the defendant of the place of mooring.

(Argued September 29, 1873; decided January term, 1874.)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department, reversing a judg-

ment in favor of the defendant entered upon the report of a referee and granting a new trial.

This action was brought upon a policy of insurance.

By the policy the defendant insured Elizabeth F. Lewis, $2,000 upon the "body, tackle, apparel and other furniture of the boat called the 'A. Newcomb,'" of Oswego, from the 1st day of May, 1867, to the 1st day of May, 1868. The perils insured against were of the "inland lakes, rivers, canals and fires." The excepted perils are described as follows: "For damage that may be done by the vessel hereby insured to any other vessel or property; from ice, incompetency of the master or insufficiency of the crew, or from want of ordinary care and skill in loading and stowing the cargo of said vessel; from rottenness, inherent defects and other unseaworthiness; from theft, barratry or robbery," etc., etc. The policy gave permission to navigate the inland lakes, rivers and canals of the State of New York, including the North and East rivers and harbor of New York, etc. Warranted "not to navigate between noon of the fifteenth day of December and noon of the first day of April following; during the last named time to be laid up tight and safely moored, satisfactorily to this company."

On the 26th October, 1867, the boat and appurtenances were sold and delivered by Elizabeth F. Lewis to the plaintiff, and the policy of insurance was at the same time assigned to him, by and with the consent in writing of the defendant. The boat arrived at Oswego on Saturday, the 5th day of December, 1867, and was laid up under the Oswego river bridge at the lower end of the canal basin. She was made fast to two other boats by lines extending from her bow and stern, and also by an anchor chain fastened to an iron ring in the sea-wall, *i. e.*, the wall which separates the canal basin from the Oswego river. The boat was frozen in the ice that night, and remained so until the 13th March, 1868. On the 13th March, 1868, the ice, which had broken loose in the river, accumulated in the channel above the bridge and became so jammed as to partially dam the river. The water rose

rapidly and flowed over the sea-wall in such quantity as to cause a sudden rise of water in the basin. The boat was loosened from the ice around her stern and larboard side, but was held fast by the ice at her bow and starboard side forward. The water raised the stern while the bow remained fast, and thus wrenched and twisted the boat, breaking her floor and top timbers and causing other injuries.

The referee found, as facts, that the boat was not safely moored, that no notice whatever was given to the defendant, and that the damage was caused by ice, and he directed judgment for the defendant, which was entered accordingly.

*T. C. T. Buckley* for the appellant. Under the ice clause in the policy defendant was not liable. (*Dows* v. *How. Ins. Co.*, 5 Robt., 473.)

*A. Perry* for the respondent. The freshet being the immediate cause of the damage, it was not material for the referee to inquire or decide whether it was caused by ice or otherwise. (2 Arn. on Ins., 764, *et seq.*; 2 Pars. M. Law, 212, note 1, pp. 125, 227, 228; note 1, p. 260; *Busk* v. *Roy. Ins. Co.*, 2 B. & Ald., 73; *Walker* v. *Maitland*, 5 id., 171; *Petapsco Ins. Co.* v. *Coulter*, 3 Pet., 222; *Waters* v. *Mer. L. Ins. Co.*, 11 id., 213; *Draper* v. *Com. Ins. Co.*, 4 Duer, 234, 239; *Nelson* v. *Suf. Ins. Co.*, 8 Cush., 477, 496; *Gates* v. *Mad. Co. M. Ins. Co.*, 1 Seld., 469, 478; *Matthews* v. *How. Ins. Co.*, 1 Kern., 9.) In a case of the concurrence of different cause, the loss is to be attributed to the efficient predominating peril. (1 Phil. on Ins., 1132, 1137; 2 Pars. M. Law, 258; *Webb* v. *Pro. Ins. Co.*, 14 Mo., 3; *Hahu* v. *Corbett*, 2 Bing., 205; *Montoza* v. *Lond. Ins. Co.*, 6 Exch., 451; 4 Eng. L. and Eq., 500; *Hodgson* v. *Malcolm*, 5 B. & P., 336.) The word ice, as used in the policy, refers to ice encountered in the navigation of the boat. (1 Phil. on Ins., 124; 2 Pars. M. Law, 53; *Van Deusen* v. *C. O. Ins. Co.*, 1 Robt., 55, 64; *At. D. Co.* v. *Leavitt*, 50 Barb., 135, 144; *Coffin* v. *Reynolds*, 37 N. Y., 640, 644; *Aiken* v. *Wasson*, 24 id., 482, 484; *People*

v. *Gardiner*, 48 Barb., 608, 612; *Tomlinson* v. *Mayor of N. Y.*, 23 How. Pr., 452; *Hickok* v. *Bliss*, 34 Barb., 321; *Scranton* v. *Baxter*, 4 Sandf., 5; *Smith* v. *Devlin*, 23 N. Y., 363.)

REYNOLDS, C. As the order of reversal does not state that the reversal proceeded from any error of fact by the referee, we can consider only questions of law resulting from the facts found.

The court below evidently considered the case one not free from difficulty, and so far, at least, we concur in their opinion. If it had not been for the ice the injury would not have happened, nor would it have occurred but for the presence of a large quantity of water in the Oswego river at the critical moment. The absence of either element, therefore, would probably have avoided the injury. We must, if it be possible, determine which, in the eye of the law, was the immediate and which the remote cause of the disaster. It is quite impossible to conceive of any disaster, marine or otherwise, which is not produced by the agency of several causes operating in a greater or less degree. Shipwrecks on the sea and conflagrations upon the land, do not, ordinarily, result from a single cause, but generally from the combined influence of many unfriendly elements. An insurance against damage by fire, subjects the underwriter to liability if the insured property receives injury consequent upon fire, from water, breakage and various other incidents of such a misfortune. But for the fire the other incidents would have been inconsequential, and hence the fire, however occasioned, is the proximate cause, and if a high wind spreads the conflagration beyond all calculation, it is still the fire, and not the wind, in the judgment of the law, that produces the calamity and makes the insurer responsible, and yet, but for the unforeseen wind, the fire itself would have been comparatively harmless. We must, if we can, give full effect to the contract of insurance made between the parties, and, in the effort to do that, we must at once discard the suggestion that the excepted

injury from ice related only to those incident to the perils of navigation. The navigation of canal boats on the internal canals of this State, we may safely assume, is not usually attended with serious peril from ice, and when it is specially provided, as in this case, that the vessel was not to navigate between the fifteenth of December and the first of April following, and that during that period the vessel was to be "laid up tight and safely moored," we are bound to conclude that the exemption from injuries, occasioned by ice, were not those only happening when the vessel was actually engaged in navigation. If the vessel had been intended to visit the Arctic ocean, it is possible that a different presumption might have been indulged. We have no right to say that the exemption from liability, caused by ice, was intended to be limited to injuries happening while the boat was engaged in actual navigation. The language exempts the defendant from liability from *all* damage caused by ice.

In a marine policy against the "perils of the sea," the underwriter assumes only extraordinary risks, and if a vessel goes down by the ordinary action of the wind and the waves, the insurer is not responsible, for the vessel is assumed to have been unseaworthy. In making the insurance, therefore, the fitness of the vessel for the intended voyage is to be considered. "A coasting schooner needs one kind of fitness — a freighting ship to Europe another — a whaling ship another, and a ship insured only while in port another" (Parson's Merc. Law, 427, and cases cited); and it may be added, a canal boat intended for internal navigation, quite another, and it is, therefore, well settled that in construing such a contract, regard is to be had to the navigation intended and to the fitness of the vessel for the perils likely to be encountered.

Under an insurance against the perils of the sea, it has been held that if a vessel reach a harbor in the course of its voyage, and is detained therein by stress of weather, or by being frozen in, or by any such cause, the damage does not fall upon the insurer. (*Evertts* v. *Smith*, 2 M. & Selw., 278.) But the insurer may specially contract for greater or less risk,

according to the nature of the case, and where a canal boat is insured with an exemption, for damages caused by ice, it must be assumed that the exemption was intended to refer to injuries most likely to occur in such a case from such a cause, and it could not, therefore, very well refer solely to mere canal navigation, or the other navigation permitted by the policy in controversy, within the period of time to which it was limited. We must, therefore, endeavor to find out the proximate cause of the injury, in the present case, within the meaning of the law. What is or what is not the immediate cause of any disaster, is a question of fact, and, if the finding of the referee in this case, as to the proximate cause of their injury, is to be regarded as a pure question of fact, we have no alternative but to regard it as conclusive upon this branch of the case. But the finding ought not to be so regarded. It is rather more a finding of law, upon certain facts established and stated in detail in his report, and is quite like an old-fashioned special verdict, and should be so considered in giving our judgment.

The injury in this case was obviously occasioned by the combination of two causes operating at the same time : one an undue quantity of water at the stern, and the other the tenacity of the ice at the bow of the vessel insured. It may be added that the excess of water, at the time of the injury, resulted largely, if not entirely, from an ice-dam in the river. If the ice-dam had not obstructed the flow of the water, the water would not have disturbed the stern of the boat, and even then, if the ice had not imprisoned the bow, the excess of water would not have twisted the vessel to its injury. Giving, therefore, full effect to the maxim *causa proxima non remota spectatur*, as paraphrased by Lord BACON (Bac. Max. Reg. 1; Broom Leg. Max., 215; *Babcock* v. *Montgomery Co. Mutual Ins. Co.*, 4 N. Y., 326): "It were infinite for the law to consider the cause of causes and their impulsion one on another, therefore, it contenteth itself with the immediate cause and judgeth of acts by that, without looking to any further degree," we must conclude that the

ice was the effect, and in law, the proximate cause of the injury in the present case. It was the ice-dam that caused the waters of the Oswego river at just this time to flow in wild commotion, and when this was done it was still the ice that held the bow of the vessel, in its grasp, until the injury happened for which damages are now sought to be recovered. As the defendant is exempted from liability for any damage caused by ice, the plaintiff cannot recover.

This conclusion renders the consideration of any other questions in the case unimportant. The referee found that the boat had not been safely moored by the insured as required by the policy, and some questions of evidence relating exclusively to that proposition, were raised upon the trial, but their determination either way would not alter our judgment.

The order of the General Term should be reversed, and judgment absolute ordered in favor of the defendant, with costs.

EARL, C. (dissenting). At the time the canal boat was injured, she was safely moored in the canal basin adjoining the Oswego river. She was fastened in the ice frozen about her, and, without the concurrence of some other cause, was in no peril from the ice. A freshet then occurred in the river, and the water rose rapidly and flowed over the sea-wall separating the basin from the river, and raised the stern of the boat, while her bow was held fast by the ice, and thus the injury was done. The ice would not have occasioned the injury without the freshet, and the freshet would probably have done no injury if the boat had not been held fast by the ice at her bow. If the injury can be said to have been caused by the ice, then, by the terms of the policy, the defendant is exempted from liability, but if it was caused by the freshet, then it is unquestioned that the loss is covered by the policy. It is frequently difficult to determine whether a loss arises from a peril insured against, and this difficulty is increased when different causes concur at the same time in producing the loss. The courts always look at the proximate cause, and if that be a peril insured against,

no matter how many other causes may have contributed to the loss, the insurer is held liable. *Causa proxima, non remota spectatur* is a fundamental principle in the law of insurance, and the reason is, as given by Lord BACON, that "it were infinite for the law to consider the cause of causes, and their impulsion, one on another; therefore, it contenteth itself with the immediate cause." (2 Arnould on Ins., 764.) In 1 Phillips on Insurance (§§ 1132 and 1137), it is said, as the result of all the jurisprudence upon the subject, that in case of the concurrence of different causes, to one of which it is necessary to attribute the loss, it is to be attributed to the efficient predominating peril, or that by which the operation of the other is directly occasioned as being merely incidental to it. The rule is laid down in 2 Parsons on Maritime Law, 258, as follows: "That the insurers are liable or exonerated, according as the leading and principal cause of the loss be one insured against, or one that is excepted." The rule is plain enough, but its application is not infrequently difficult, and this is a case in which the difficulty is presented. I am, however, of opinion that the freshet must be regarded as the proximate cause of the loss.

The boat was quietly and safely lying in the canal basin, and the water, largely increased in volume by the freshet, came there in large quantities and raised the stern of the boat, and twisted and wrenched her, thus greatly injuring her. This injury would not have been occasioned, if the boat had not been held fast by the ice, and, yet, the ice was the remote cause, and the freshet the active, efficient and direct cause. The ice can no more be said to have been the direct cause of the injury than a dock could be said to have been if the boat had been tied to one, and thus held fast while she was dashed to pieces by a freshet. We must, therefore, hold that the loss was occasioned by a peril insured against.

The policy provided that the boat should not be navigated between noon of the fifteenth day of December and noon of the first day of April following, and that between those dates she should be tied up tight and safely moored, satisfactorily to the

company, and the referee found that she was not, during that
time, safely moored, and that no notice was given to the com-
pany of the place where she was moored ; and, hence, the fur-
ther question to be considered is, whether this finding can
uphold the judgment ordered by him.    It could not have been
the intention of the parties that, during the period mentioned,
the boat should be moored with absolute safety, because she could
not be moored in any place where she would be entirely free
from any casualty or danger.   If such a construction were given
to the policy, the owner would, during the period mentioned,
be practically without any insurance, taking upon himself all
the risk to his boat, and that certainly would be against the
manifest intention of the parties.    He was to lay up and moor
his boat as specified, and then, during the period mentioned,
the insurance was to cover his boat, except as otherwise speci-
fied in the policy.   It must have been the intention of the
parties that the boat should be moored in a proper place, with
reasonable care and safety.   I have looked carefully into the
case, and I can find no evidence that she was not thus moored.
The basin was a place where many boats were moored every
winter, and it does not appear that any of them were ever
injured or lost in consequence of any freshet in the river but
this one.   If, therefore, the learned referee meant by his find-
ing that this boat was not moored with reasonable safety, there
was no evidence to sustain his finding.   If he meant that the
boat was not moored with absolute safety, the finding was
immaterial and could not be the basis of the judgment
ordered by him.   There was nothing in the policy requiring
that the plaintiff should give the company notice of the place
where the boat was moored.   If it had been the intention of
the parties that notice should be given, a matter of such
importance to the rights of the parties would have been
inserted in the policy.   No one of ordinary understanding,
in reading the policy, would suppose that it requires such
notice, and to give it such a construction as to require notice
would entrap the insured.   The conditions in a policy which
are intended to exempt the insurer from a liability which

would otherwise rest upon him, should be plainly inserted, so that the insured can understand his rights and duties, and not lose the protection of his policy by implication and inference from the uncertain language used by the underwriter. Some meaning must, however, be given to the word "satisfactory," used in this connection in the policy. Canal boats run upon well known channels, and insurance companies have their agents at different points along such channels, and it is quite easy for them to ascertain where boats insured by them are moored. If they find that a boat is not moored in a proper place, they can object, and thus shield themselves, without question, from liability, if their objections be not heeded. While they cannot, under such a policy as this one, require that a boat should be moored in a place of absolute safety, they can in all cases require that it shall be moored in a place of reasonable safety, and require that it should be properly fastened. But the objection that no notice was given of the place where the boat was moored, was not taken in the answer, nor in any way upon the trial. If it had been, perhaps the plaintiff could have shown that it was given, and for this reason, also, the objection should not now prevail.

I am, therefore, of opinion that the order of the General Term should be affirmed, and judgment, absolute, ordered against the defendant, with costs.

For reversal, LOTT, Ch. C., REYNOLDS and GRAY, CC.

For affirmance, EARL and JOHNSON, CC.

Order reversed, and judgment on the report of the referee affirmed.